UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----

JOSE VELEZ,

                          Petitioner,

       -against-

GEORGE B. DUNCAN, Superintendent, Great
Meadow Correctional Facility,

                          Respondent.

00 Civ. 6163 (RJH)

**MEMORANDUM OPINION AND ORDER**

-----

       Pro se petitioner Jose Velez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on July 29, 1997, in Supreme Court, New York County. Petitioner was convicted after a bench trial of burglary in the second degree and criminal mischief in the fourth degree for ransacking and burglarizing a woman's apartment. He is currently serving an indeterminate sentence of sixteen years to life for the burglary charge and one year for the criminal mischief charge, to run concurrently, at the Fishkill Correctional Facility in Fishkill, New York.

       After petitioner filed his initial habeas petition, the case was referred to Magistrate Judge Ronald L. Ellis for a Report and Recommendation. Petitioner then moved for leave to amend his petition to add new claims, which this Court granted. Judge Ellis has since issued two Reports recommending that the writ be denied. Petitioner filed a timely objection to each Report. This Opinion adopts the Reports.

## BACKGROUND

The background and relevant procedural history are set forth in the two Reports issued by Judge Ellis, familiarity with which is assumed. *See Velez v. Duncan*, No. 00 Civ. 6163 (BSJ) (RLE), 2005 U.S. Dist. LEXIS 9699, 2005 WL 1221836 (S.D.N.Y. May 13, 2005); *Velez v. Duncan*, No. 00 Civ. 6163 (RJH) (RLE), 2006 U.S. Dist. LEXIS 10285 (S.D.N.Y. Mar. 6, 2006). The facts relevant to this Opinion are briefly highlighted here.

Petitioner was arrested for burglary on October 5, 1995, after Yvonne Whitfield reported to police that she had returned home to find petitioner in her apartment, the door lock and door frame damaged, and the apartment ransacked. The People offered petitioner a plea of nine years to life if petitioner pled guilty to burglary in the second degree, a class "C" felony. Upon petitioner's rejection of the People's offer, New York County Court Judge Gerald Sheindlin stated off-the-record that if petitioner opted for a bench trial instead of a jury trial and was subsequently found guilty of burglary in the second degree, he would receive a maximum sentence of eight years to life as a persistent violent felony offender.[1] (2005 Obj. Ex. E (Resentencing Tr. (Dec. 23, 1997)), at 4, 5–9.) Petitioner accepted Judge Sheindlin's offer. After a three-day bench trial, Judge Sheindlin found petitioner guilt of burglary in the second degree, N.Y. Penal Law § 140.25(2), and criminal mischief in the fourth degree, N.Y. Penal Law § 145.00(1). On July 29, 1997, Judge Sheindlin sentenced petitioner as a persistent violent felony offender to eight years to life on the burglary count and one year on the criminal mischief count,

---

[1] Under New York State Penal Law § 70.08, a "persistent violent felony offender" is a person convicted of a violent felony offense following a conviction on two prior felonies. Petitioner was convicted in 1987 of attempted burglary and in 1990 of burglary in the second degree.

2

the sentences to run concurrently. On October 20, 1997, the trial court denied petitioner's post-trial motions.

On December 12, 1997, the State filed a motion to set aside the sentence for burglary in the second degree on the ground that it was invalid as a matter of law.[2] On October 1, 1995—four days before the crime took place in this case—the statutory minimum for a class "C" felony by a persistent violent felony offender was raised from eight years to sixteen years. *See* N.Y. Penal Law § 70.08(3)(b). Because Velez was indicted for the instant crime on October 11, 1995, the State argued that the new minimum of sixteen years applied to him. Petitioner's attorney argued that, in waiving his right to a jury trial, he had relied on Judge Sheindlin's promise that he would sentence petitioner to eight years to life, and thus that the sentencing promise should be enforced. Judge Sheindlin rejected this argument, stating,

> The defendant waived a jury in this case not so much because of the sentence but because he was hoping that I would somehow or other be persuaded by his testimony knowing that a jury would never have accepted his story that he weaved before me. . . . This observation is supported by the fact that if I promised him eight to life after the trial, why would he go to trial before me knowing that he is going to get eight to life. Why didn't he plead guilty? . . . He still hoped against hope . . . that he would beat the charges and receive no time whatsoever.

(Resentencing Tr. 7–9.) Accordingly, on December 23, 1997, Judge Sheindlin granted the State's motion and resentenced petitioner to a term of sixteen years to life.

---

[2] Under N.Y. Crim. Proc. Law § 440.40, if an inmate has received an illegal sentence, the State may move to have the offending sentence vacated and the defendant resentenced by a judge. Section 440.40(1) provides, in relevant part, that at any time not more than one year after the entry of a judgment, the court in which it was entered may, upon motion of the People, set aside the sentence upon the ground that it was invalid as a matter of law. The defendant and his counsel must be informed of such a motion and given an opportunity to appear in opposition to the motion. N.Y. Crim. Proc. Law § 440.40(4). If the court grants the People's motion, it must then resentence the defendant in accordance with the law. N.Y. Crim. Proc. Law § 440.40(5).

3

On direct appeal to the Appellate Division, First Department, petitioner claimed that: (1) the State failed to prove petitioner's guilt beyond a reasonable doubt; (2) petitioner was denied effective assistance of trial counsel in violation of the Sixth Amendment; and (3) the court's resentencing of sixteen years to life, after initially issuing a sentence of eight years to life, constituted cruel and unusual punishment in violation of the Eighth Amendment.  On March 21, 2000, the Appellate Division affirmed the conviction and sentence, finding that:  (1) the verdict was based on legally sufficient evidence and there was no reason to disturb the trial judge's determinations concerning credibility; (2) petitioner received effective assistance of counsel, and even if petitioner's counsel's mistake regarding the minimum sentence for a class "C" felony caused petitioner to reject a favorable plea offer, he was not prejudiced because the plea offer was itself unlawful; and (3) the new sentence did not constitute cruel and unusual punishment.  *See People v. Velez*, 706 N.Y.S.2d 306, 306 (N.Y. App. Div. 2000). Petitioner's application for leave to appeal to the New York State Court of Appeals was denied on May 19, 2000.

Petitioner's initial habeas petition, filed with this Court on July 26, 2000, challenged his incarceration on the same three grounds.  Judge Ellis issued a Report and Recommendation ("2005 Report") on May 13, 2005, recommending that the writ be denied and the petition dismissed on the grounds that:  (1) there was sufficient evidence for the trier of fact to find petitioner guilty of the crimes of which he was convicted; (2) petitioner received effective assistance of counsel; and (3) petitioner's sentence is within the range prescribed by state law and not grossly disproportionate to the severity of the crime, and, therefore, is not cruel and unusual in violation of the Eighth Amendment.  *See*

*Velez*, 2005 U.S. Dist. LEXIS 9699, 2005 WL 1221836.  Petitioner filed objections to each of the 2005 Report's conclusions ("2005 Objections").

On September 20, 2005, the Court granted petitioner leave to amend and ordered respondent to submit a response to petitioner's new claims.  The amended petition raises three claims:  (1) a renewed sentencing claim that focuses on the contractual nature of Judge Sheindlin's promise of eight years to life and seeks specific performance; (2) a renewed claim of ineffective assistance of counsel; and (3) a claim that the prosecution intimidated petitioner's key trial witness.  The first claim refers to a motion to vacate judgment that petitioner filed on June 3, 2004, in state court, pursuant to New York Criminal Procedure Law § 440.10(1)(h), after filing his original habeas petition.  The state court denied his motion without opinion on September 7, 2004, and the Appellate Division denied leave to appeal on November 30, 2004.  (*See* Amended Complaint Exs. A–E.)

Judge Ellis issued a report and recommendation ("2006 Report") with respect to the amended petition on March 6, 2006.  The 2006 Report concludes that (1) the trial judge's determination that petitioner's waiver of a jury trial was not induced by the trial judge's mistake about the minimum sentence was not unreasonable; (2) petitioner's new evidence regarding his ineffective assistance of counsel claim does not establish that the state court employed an "unreasonable application" of Supreme Court precedent; (3) the witness intimidation claim is unexhausted, and, in any event, petitioner has not demonstrated that his witness was actually intimidated or that her testimony would have affected the outcome of his case.  *See Velez*, 2006 U.S. Dist. LEXIS 10285.  Petitioner

5

filed objections only to the 2006 Report's first conclusion, the sentencing issue ("2006 Objections").

## DISCUSSION

### I. Standard of Review

#### A. AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review § 2254 petitions. When a claim has been adjudicated on the merits in state court proceedings, habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The court presumes that factual findings by a state court are correct unless the petitioner rebuts this presumption by "clear and convincing evidence." 28 U.S.C. §§ 2254(d)(1), (d)(2), (e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

#### B. Review of Magistrate Judge's Report

The district court adopts a Magistrate Judge's report and recommendation when no clear error appears on the face of the record. *See Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). However, the court is required to make a de novo determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Badhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). The court may then accept, reject, or modify in whole or in part

recommendations of the Magistrate Judge.  *See Nelson*, 618 F. Supp. at 1189.  If, however, the party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  *Sanchez v. Dankert*, No. 03 Civ. 2276 (LTS), 2004 U.S. Dist. LEXIS 3716, 2004 WL 439502, at *1 (S.D.N.Y. Mar. 9, 2004); *accord Johnson v. City Univ. of New York*, No. 00 CV 4964 (WK), 2003 U.S. Dist. LEXIS 10615, 2003 WL 21435469, at *1 (S.D.N.Y. June 19, 2003); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997).  "If no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error."  *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).

Taken together, petitioner's objections largely reiterate the arguments made to, and rejected by, Judge Ellis.  "It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge."  *Camardo v. GM Hourly-Rate Emples. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).  In such circumstances, the Court "need only satisfy itself that there is no clear error on the face of the record."  *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted); *see Camardo*, 806 F. Supp. at 382 (W.D.N.Y. 1992) (dismissing objections where defendant attempted to rehash its entire argument).  Nevertheless, the Court has, pursuant to 28 U.S.C. § 636(b)(1)(B), made a de novo review of the Reports' findings

7

and adopts their conclusions in their entirety. In this Opinion, the Court largely addresses those arguments in petitioner's Objections that were not directly rejected by the Reports.

## II. Petitioner's Objections

### A. Sentencing-Related Claims

Petitioner's main argument regarding his sentence is that his waiver of his right to a jury trial should be held involuntary because it was based on erroneous information about the minimum sentence available. (*See, e.g.,* 440 Mot. at 7–8; 2005 Obj. at 1–4; 2006 Obj. at 10.) The 2006 Report directly addresses this argument and finds that the state courts' determination that petitioner's waiver was not induced by the mistaken sentence was not "contrary to" or an "unreasonable application" of federal constitutional law as determined by the Supreme Court. This Court agrees. It was not unreasonable for the state courts to find that petitioner waived his right to a jury trial primarily because he believed he had a better chance of being acquitted at a bench trial, and not because he was seeking a sentence that included a minimum of eight years. Judge Sheindlin explained at the resentencing hearing that he told defense counsel that he would sentence petitioner to the minimum term after a bench trial in answer to defense counsel's question about what the sentence would be, and not to induce petitioner to waive his right to a jury trial, and that if petitioner had chosen to go before a jury instead, "the same indication probably would have been made."[3] (Resentencing Tr. 7.)

Petitioner nonetheless argues that he is entitled to specific performance of the trial judge's promise of eight years to life, analogizing his case to the defendant's in *People v.*

---

[3] The Court notes that the trial judge kept his promise that, if petitioner waived a jury, the judge "wouldn't hurt him on the sentence" (Resentencing Tr. 6) by sentencing petitioner to the minimum at both the original sentencing and resentencing.

8

*McConnell*, 402 N.E.2d 133 (N.Y. 1980).[4]  The *McConnell* line of cases represents an exception to the general rule in New York state that contract principles are inapplicable to plea agreements and that a defendant may not compel specific performance of such an agreement.  *See Rubendall*, 772 N.Y.S.2d at 351.  In *McConnell*, the New York Court of Appeals held that specific performance of a sentencing promise may be required where withdrawal of a plea agreement may cause prejudice to the defendant.  *See McConnell*, 402 N.E.2d at 137.  The defendant in *McConnell* was placed in a "no-return" position by the requirement in his plea agreement that he testify at a grand jury that indicted the defendant and three codefendants and at the criminal trial of one of his codefendants.  *See id.* at 135.  The New York Court of Appeals, citing concerns of "essential fairness," concluded that defendant was entitled to specific performance of his sentencing promise because by testifying in related proceedings the defendant waived his privilege against self-incrimination to a greater degree than a defendant does who merely pleads guilty. *See id.* at 136–37; *see also Selikoff*, 318 N.E.2d at 792 (recognizing that specific performance of a sentencing promise might be necessary where a defendant not only waives his right to trial, but performs other services for the prosecutor as well). Petitioner here argues that he is entitled to specific performance because he has already received a bench trial and therefore vacating his sentence cannot return him to the position he was in prior to the waiver.  *See McConnell*, 402 N.E.2d at 136.  As explained

---

[4] The Court notes that petitioner did not raise this particular argument regarding specific performance until he filed his § 440.10(1)(h) motion on June 3, 2004—more than six years after he was resentenced.  The motion does not appear to have been timely under New York law, which appears to require such motions to be filed within one year of the entry of judgment.  *See* N.Y. Crim. Proc. Law § 440.40.  Nevertheless, because the Supreme Court, Bronx County did not specify the grounds upon which it denied petitioner's § 440.10 motion, the Court addresses this argument on its merits.

above, however, Judge Sheindlin found that petitioner's decision to waive his right to a jury trial was not induced by the sentencing promise but was instead based on petitioner's belief that Judge Sheindlin would be more easily persuaded than a jury by petitioner's version of events.  Moreover, petitioner has submitted no evidence to suggest that the outcome at a jury trial would have been any different.  Indeed, Judge Scheindlin observed that he "was convinced beyond all []—not beyond a reasonable doubt—but all doubt" of petitioner's guilt (2005 Obj. Ex. B (Sentencing Tr. (July 29, 1997)), at 19), that petitioner's testimony at trial was "bizarre" and "nonsensical" (Sentencing Tr. 15), and that "a jury would never have accepted his story" (Resentencing Tr. 7).  Accordingly, the Court finds that petitioner has not demonstrated that he was prejudiced by the trial judge's mistake as to the minimum sentence and therefore he is not entitled to specific performance of the sentencing promise.

Petitioner also suggests at several points in his Objections that he was prejudiced by the imposition of a new sentence because Judge Sheindlin's sentencing promise induced petitioner to turn down the State's plea bargain offer of nine years to life.[5]  (*See* 2005 Obj. 1–2; 2006 Obj. 5, 7, 17.)  This argument assumes that petitioner could have "locked in" a sentence of nine years to life had he accepted the plea offer.  This assumption is wrong.  The prosecution's plea offer of nine years to life was legally invalid because it was below the mandatory minimum of sixteen years for a persistent

---

[5] Although it is not entirely clear whether petitioner intended to place this argument before the Court, given the references in the Objections to petitioner's decision to pass on the State's plea bargain offer, the fact that petitioner presented this argument on direct appeal to the Appellate Division (*see* Prescod Aff. in Opp'n to Pet. for Habeas Corpus, Ex. 12 (Def.'s Appeal), at 18), and the Second Circuit's admonition that courts interpret pro se papers to raise the strongest arguments that they suggest, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the Court chooses to address the argument.

10

violent felony offender convicted of a class "C" felony.  *See* N.Y. Penal Law § 70.08(3)(b) (stating that, if a court finds that the predicate convictions occurred ,"the court must impose" an indeterminate life sentence with a minimum term of at least sixteen years to life); *Mask v. McGinnis*, 233 F.3d 132, 136 (2d Cir. 2000) (noting that the minimum sentence described in § 70.08(b) is "the lowest sentence" that the prosecutor can "legally offer in a plea"); *People v. Fishon*, 468 N.Y.S.2d 185 (N.Y. App. Div. 1983) (resentencing defendant who pled guilty to correct court's mistake regarding mandatory minimum under N.Y. Penal Law § 70.08).  As a result, had petitioner in fact accepted the prosecution's plea bargain of nine years to life, the State would have been entitled to move to vacate the sentence, just as it did in this case.  *See* N.Y. Crim. Proc. Law § 440.40; *see People v. Selikoff*, 318 N.E.2d 784, 791 (N.Y. 1974) ("[A]ny sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources."); *cf. People v. Bartley*, 401 N.Y.S.2d 71, 73 (N.Y. App. Div. 1977) (holding that where the government and a defendant reach a prior agreement as to sentence, the court is not bound, and the only possible remedy is rescission of the plea agreement, not specific performance).  Once the original sentence had been vacated, petitioner would have had the option of either accepting a lawful sentence (i.e., a sentence with a minimum term of sixteen years) or withdrawing his plea. *See People v. Rubendall*, 772 N.Y.S.2d 346, 352 (N.Y. App. Div. 2004) (holding that where a sentencing court cannot or will not impose the sentence promised, and the defendant does not wish to agree to the imposition of a different sentence, "he is entitled to no more than the withdrawal of his plea of guilty"); *People ex rel. Anderson v.*

*Krueger*, 294 N.Y.S.2d 648 (N.Y. App. Div. 1968) (finding that where sentencing court mistakenly imposed a sentence below the minimum, the defendant was "entitled to no relief beyond being afforded an opportunity to withdraw his plea"). Had he chosen to withdraw his plea, he then could have either proceeded to trial (where he would have faced the same sixteen-year minimum sentence if convicted) or attempted to negotiate a plea bargain for a lesser charge, keeping in mind that a defendant has no constitutional right to a plea bargain, *see Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *Mask v. McGinnis*, 28 F. Supp. at 124. Thus, even if petitioner had accepted the plea offer of nine years to life, he could never have enforced it. It was for this reason that the Appellate Division found that "[a]lthough defendant claims that his trial counsel's misapprehension (shared by the court and prosecutor) as to the lawful scope of sentence in the event of conviction after trial led him to reject a favorable plea offer, defendant was not prejudiced because the offered sentence was itself unlawful." *Velez*, 706 N.Y.S.2d at 306.

Having reviewed all of petitioner's sentencing claims de novo, the Court adopts the Reports' conclusion that the state courts' decision to uphold petitioner's sentence of sixteen years to life was not an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### B.     Ineffective Assistance of Counsel Claim

In his Objections to the 2005 Report's recommendation that this Court deny petitioner's ineffective assistance of counsel claim, petitioner argues that his attorney visited him only once, on May 19, 1997, the day before trial. As proof, petitioner offers a letter from the Records Access Officer at the prison, which states that there were no

12

entries in the attorney log book for petitioner on April 14, 1997, or April 29, 1997, the days on which petitioner's counsel claimed in a letter to the Grievance Committee of the Westchester Bar Association that he visited petitioner "in the pens."  Because petitioner made this same argument in his amended petition, the 2006 Report squarely rejected it, and petitioner did not object to that portion of the 2006 Report.  Nevertheless, the Court has reviewed de novo this portion of the 2006 Report and adopts its conclusion that this new evidence does not establish that the state court employed an "unreasonable application" of the *Strickland* standard in finding petitioner's counsel was not ineffective.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In addition, the Court rejects petitioner's argument that his counsel was ineffective because he advised petitioner to reject the plea offer and accept the judge's offer of a bench trial, with the promise of eight years to life if convicted, rather than risk a jury trial.  As explained above, petitioner has not demonstrated that there was a "reasonable probability," *see Strickland*, 466 U.S. at 694, that his sentence would have been different had he accepted the prosecution's invalid plea offer or proceeded to a jury trial.  Because petitioner has not satisfied the *Strickland* test for ineffective assistance of counsel, he is not entitled to habeas relief on this claim.

### C. Legally Sufficient Evidence to Convict

In his 2005 Objections, petitioner presents no new arguments to support his claim that the State did not present sufficient evidence to prove his guilt beyond a reasonable doubt. Instead, he argues that Whitfield lied in her testimony.  The Court rejects these Objections.  After viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have credited Whitfield's testimony and

discredited petitioner's testimony. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Pierce*, 224 F.3d 158, 164 (2d Cir. 2000) ("A defendant shoulders a heavy burden in challenging the sufficiency of evidence supporting a conviction.").

### D.     Witness Intimidation Claim

Although petitioner did not file an objection to the 2006 Report's conclusion that his witness intimidation claim is unexhausted, the Court has reviewed the record de novo and adopts the Report's conclusion that petitioner has not presented this claim to the state courts. Petitioner must exhaust his claims in state court prior to obtaining federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 840 (1999) (noting that rules of comity require that "state prisoners . . . give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

## CONCLUSION

For the reasons stated above, the Court adopts the Reports of Magistrate Judge Ronald L. Ellis in their entirety. The petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998). The Court also finds pursuant to 28 U.S.C. 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition.

SO ORDERED.

Dated: New York, New York
      May 30, 2007

                                                                  _____
                                                                  Richard J. Holwell
                                                               United States District Judge